IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 18-cr-00073-DKW-1 |
| Plaintiff, | **ORDER DENYING DEFENDANT'S SECOND MOTION FOR COMPASSIONATE RELEASE** |
| vs. | |
| NATHAN YUEN GRIT LUM, | |
| Defendant. | |

Less than 11 months into his 30-month sentence, Defendant Nathan Yuen Grit Lum again asks the Court to reduce his sentence to time served because his age and medical conditions, in light of the COVID-19 pandemic, present an extraordinary and compelling reason warranting such a reduction. The Court disagrees, and, for the reasons set forth below, his motion is once more DENIED.

## RELEVANT BACKGROUND

On March 28, 2019, Lum pled guilty to aggravated identity theft and failure to file a tax return. Dkt. No. 26. On January 29, 2020, the Court sentenced Lum to 30 months' imprisonment followed by one year of supervised release. Dkt. Nos. 40, 41. Lum received a below-guideline range[1] sentence due to a combination of

---

[1]Pursuant to the sentencing guidelines, Lum's recommended imprisonment term was 36 months. Dkt. No. 38 at 20 (explaining the aggravated identity theft conviction carried a mandatory minimum of 24 months' imprisonment to be served consecutively with any other sentence and concluding 12 months (the statutory maximum) was warranted for failure to file a tax return).

his age, employment record, family ties and responsibilities, and acceptance of responsibility.  Dkt. No. 42 at 3.

On May 1, 2020, less than two months into his sentence,[2] Lum filed his first motion for sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) ("first compassionate release motion").  Dkt. No. 47.  The Court denied that motion on June 25, 2020, explaining that, consistent with CDC guidance and the number of infections at Lum's facility at the time, Lum had not presented an extraordinary and compelling reason warranting release.  Dkt. No. 65.  And even if he had, the Court further noted that the goals of sentencing would not be served by releasing him.  *Id.*

Just over six months later, Lum has now filed a second motion for sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) ("second compassionate release motion").   Dkt. No. 67.  Lum argues, as he did the first time, that his age and medical conditions—principally, obesity, diabetes, hypertension, atrial fibrillation, and sleep apnea—in light of the COVID-19 pandemic, present an extraordinary and compelling reason warranting his immediate release.  Dkt. No. 67-3.  Just days prior to filing his second compassionate release motion, the Bureau of Prisons ("BOP") offered and Lum refused a COVID-19 vaccine.  Dkt. No. 75 at 2 (explaining Lum was offered and refused the vaccine on December 30, 2020); Dkt.

---

[2]Lum self-surrendered on March 11, 2020.  *See* Dkt. Nos. 40, 41.

No. 75-1 at 1–2 (same).  On January 25, 2021, the Government filed a response

opposing any sentence reduction, Dkt. No. 71, to which Lum replied on February

1, 2021, Dkt. No. 75.  This order follows.

## LEGAL STANDARD

"'[A] judgment of conviction that includes [a sentence of imprisonment]

constitutes a final judgment' and may not be modified by a district court except in

limited circumstances." *Dillon v. United States*, 560 U.S. 817, 824 (2010)

(alterations in original) (quoting 18 U.S.C. § 3582(b)).  Such circumstances must

be "expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal

Procedure."  *See* 18 U.S.C. § 3582(c)(1)(B); *see also Dillon*, 560 U.S. at 827, 831;

*United States v. Penna*, 319 F.3d 509, 511 (9th Cir. 2003).

Congress carved out one such circumstance in 18 U.S.C. § 3582(c)(1)(A)(i).

A court may "modify a term of imprisonment" upon an inmate's motion if:

1. the inmate exhausted "all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion" on his behalf or 30 days has lapsed since the relevant warden received a request to do so;

2. the inmate has established that "extraordinary and compelling reasons warrant such a reduction" and that "such a reduction is consistent with applicable [Sentencing Commission] policy statements";

3. the court considers the sentencing factors set forth in 18 U.S.C. § 3553(a) and finds the inmate is "not a danger to the safety of any other person or the community," as provided under 18 U.S.C. § 3142(g).

*See* 18 U.S.C. § 3582(c)(1)(A)(i); U.S.S.G. § 1B1.13 (policy statement).  The

inmate bears the burden of establishing the requirements for a sentence reduction by a preponderance. *See, e.g.*, *United States v. Sprague*, 135 F.3d 1301, 1306–07 (9th Cir. 1998); *see also Walton v. Arizona*, 497 U.S. 639, 650 (1990) (a defendant's due process rights "are not violated by placing on him the burden of proving mitigating circumstances sufficiently substantial to call for leniency"), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584, 609 (2002).

## DISCUSSION

The parties appear to dispute only the second and third requirements detailed above. *See* Dkt. No. 71 at 2 (the Government concedes "the defendant appears to have exhausted his administrative remedies under the First Step Act's provisions"); *see also* Dkt. No. 67-5 (renewed compassionate release request sent to warden on December 3, 2020). The Court, as it did in June 2020, again finds that Lum has not met his burden of demonstrating an extraordinary and compelling reason warranting a sentence reduction and, even if he had, the goals of sentencing would not be served by releasing him at this time. For these reasons, Lum's second compassionate release motion is DENIED.

## I.  Extraordinary and Compelling Reasons

Section 3582(c)(1)(A)(i) permits a sentence reduction only upon a showing of "extraordinary and compelling reasons" and only if "such a reduction is consistent with applicable policy statements issued by the Sentencing

4

Commission" (the "Commission").  As this Court has explained, it is bound by the

Commission's Commentary in U.S.S.G. § 1B1.13 regarding what constitutes an

"extraordinary and compelling" reason warranting a sentence reduction.  *See, e.g.*,

*United States v. Aruda*, No. 14-CR-00577-DKW, 2020 WL 4043496, *2–*5 (D.

Haw. July 17, 2020).[3]

Accordingly, the Court applies the following framework to determine

whether COVID-19 presents an extraordinary and compelling reason warranting a

reduction in sentence:

> [A]n inmate must necessarily establish the following three elements
> by a preponderance of the evidence: (1) the inmate is "suffering from
> a terminal illness," or a "serious" physical or cognitive condition; (2)
> that condition puts the inmate at a high risk of becoming seriously ill
> from COVID-19; and (3) if the inmate were to contract COVID-19,
> the inmate's ability "to provide self-care within the . . . correctional
> facility" would be "substantially diminishe[d]" and the inmate would
> "not [be] expected to recover."

*United States v. Kazanowski*, No. 15-CR-00459-DKW-5, 2020 WL 3578310, at *7

(D. Haw. July 1, 2020) (alterations in original) (quoting U.S.S.G. §1B1.13 n.1(A)).

At 63 years old, Dkt. No. 38 at 2 (listing Lum's date of birth as February 13,

1957), Lum is more likely to have a severe reaction to COVID-19 than someone

younger.[4]  Moreover, the Court appreciates that Lum suffers from conditions—

---

[3]The Court notes Lum's disagreement with the Court's holding, but nothing he argues or cites
compels a different result.  *See* Dkt. No. 67-3 at 5.
[4]*See COVID-19: Older Adults*, CDC (updated Dec. 13, 2020),
https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html ("Risk for

obesity, hypertension, and a heart condition (atrial fibrillation)[5]—recognized by the
CDC as placing him at greater risk of having a severe reaction to COVID-19.[6]
Lum may also suffer from type 2 diabetes.  Dkt. No. 70 at 1, 18; *see also* Dkt. No.
67-3 at 10–11.[7]  As the Court has often explained, demonstrating a high risk of
becoming seriously ill from COVID-19 requires showing not only that a defendant
is a member of an at-risk group, but also that there is "a high risk of contracting the
virus because of the number of positive COVID-19 cases at the facility where [the
defendant] is housed."  *See, e.g.*, *United States v. Rodrigues*, No. 16-CR-00529-
DKW, 2020 WL 5351029, *5 (D. Haw. Sept. 4, 2020).  Lum cannot make this
showing.

The Court has previously "acknowledge[d] that USP Lompoc[, where Lum
is housed,] has struggled in containing the spread of COVID-19."  *United States v.*

---

severe illness with COVID-19 increases with age, with older adults at highest risk.") (last visited
Feb. 2, 2021).
[5]Lum is obese, with a body mass index ("BMI") of 31.2. Dkt. No. 38 at 15 (listing his height as
71 inches); Dkt. No. 70 at 1 (listing his weight as 224 pounds as of December 3, 2020); s*ee also*
Dkt. No. 67-3 at 8.  He also suffers from hypertension and atrial fibrillation.  Dkt. No. 70 at 2,
11; *see also* Dkt. No. 67-3 at 11–13.
[6]*See COVID-19 (Coronavirus Disease): People at Increased Risk for Severe Illness –People with
Certain Medical Conditions*, CDC (updated Feb. 1, 2021) https://www.cdc.gov/coronavirus/
2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Feb. 2,
2021) (listing those with BMIs of 30 or higher as having an increased risk of severe illness if
they contract COVID-19; listing those with hypertension and heart conditions other than heart
disease, coronary artery disease, cardiomyopathies, and pulmonary hypertension as possibly
having an increased risk).
[7]While Lum's A1c level measured 7.0% on December 3, 2020, indicating diabetes, he has not
yet been definitively diagnosed.  Dkt. No. 70 at 1 (indicating follow-up test needed).  *See also
Diabetes: Diabetes Tests*, CDC (last reviewed May 15, 2019),
https://www.cdc.gov/diabetes/basics/getting-tested.html (last visited Feb. 2, 2021).

*Ieremia*, No. 16-CR-00744-DKW-1, 2021 WL 67313, *3 (D. Haw. Jan. 7, 2021). Early on in the pandemic, USP Lompoc had a large outbreak, *see id.* at *3 n.7, and two inmates at the facility died from COVID-19-related complications.[8]  The Court also recognizes that over the last few months, USP Lompoc has seen a spike in cases, with as many as 49 inmates reported infected at one time.  Dkt. No. 67-3 at 18; *see also Ieremia*, 2021 WL 67313, at *3.

The Court is encouraged that the number of infections at the facility appear to be on the decline.  As of February 2, 2021 (*i.e.*, the date of this order), the BOP is reporting that just 1 inmate and 6 staff are infected at USP Lompoc.[9]  While these numbers are not conclusive as to the potential for future spikes there, they provide strong evidence that the chance of Lum contracting the virus *at this time* is hardly significant.  *See United States v. Tuisaloo*, No. 19-CR-00036-DKW-1, 2021 WL 130657, *3 (D. Haw. Jan. 13, 2021) (rejecting the argument that a recent spike in cases—at USP Lompoc—was sufficient to show a high likelihood of becoming infected).  Thus, Lum has not met his burden of showing there is a significant risk of him contracting COVID-19 at his facility.[10]

---

[8]*COVID-19 Coronavirus: COVID-19 Cases*, BOP, https://www.bop.gov/coronavirus/ (last visited Feb. 2, 2021).

[9]*COVID-19 Coronavirus: COVID-19 Cases*, BOP, https://www.bop.gov/coronavirus/ (last visited Feb. 2, 2021).

[10]The fluctuations in COVID-19 infections at USP Lompoc over the last few months are well-known to this Court.  *See Ieremia,* 2021 WL 67313 at *3; *United States v. Lefiti*, No. 15-CR-00459-DKW-1, 2020 WL 7502449, *3 (D. Haw. Dec. 21, 2020).  This case is distinguishable from both *Ieremia* and *Lefiti* because in those cases, reported infections among inmates

Even if Lum demonstrated a high risk of contracting COVID-19, he has not

demonstrated that should he contract the virus, his ability "to provide self-care

within the . . . correctional facility" would be "substantially diminishe[d]" and he

would "not [be] expected to recover." *See* U.S.S.G. § 1B1.13 n.1(A).  The Court

has found several pieces of information relevant to this determination: (1) the

number of comorbidities putting an inmate at an increased risk of a severe reaction

to COVID-19; (2) the number and trend of infections at the facility; and (3) the

number of recovered inmates and COVID-19-related deaths at the facility.  *See*

*United States v. Lefiti*, No. 15-CR-00459-DKW-1, 2020 WL 7502449, *4 (D.

Haw. Dec. 21, 2020).[11]  While the first factor weighs in Lum's favor, the latter two

do not.

The Court recognizes that, in general terms, the more comorbidities one has,

the higher risk of a severe reaction to COVID-19.[12]  Lum suffers from one,

possibly two, underlying health conditions that put him at a higher risk of severe

---

continued to rise from the motion's filing to the Court's order. *See Ieremia,* 2021 WL 67313 at
*3; *Lefiti*, 2020 WL 7502449 at *3  In other words, it was not clear to the Court when or whether
USP Lompoc would get a handle on the spike in infections and whether the spike would result in
additional inmate deaths.  Because there have not been any additional deaths reported and the
number of infections has come down significantly, that is clearly no longer the case.

[11]This list is not meant to be exhaustive and reflects considerations unique to a compassionate
release motion brought pursuant to the COVID-19 pandemic.  Similar motions brought under
different circumstances may call for consideration of altogether different information.

[12]*See COVID-19 (Coronavirus Disease): People at Increased Risk for Severe Illness –People
with Certain Medical Conditions*, CDC (updated Feb. 1, 2021)
https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-
conditions.html (last visited Feb. 2, 2021).

reaction (obesity and type 2 diabetes[13]), and two conditions that might do so (hypertension and atrial fibrillation).[14]  In addition, a person's risk of severe reaction increases with age.[15]  At 63 years old, Lum is not in the highest risk group, but he is more likely to have a severe reaction to COVID-19 than someone younger.

But as discussed above, USP Lompoc is currently on a downward trend in infections, making it less likely Lum will become infected.  Further, the facility reports that 207 inmates and 36 staff have recovered from the virus.[16]  And while there were two COVID-19-related deaths at the facility, they occurred within a four-day span in May and June of 2020, during the first surge in infections.[17]  Particularly compelling is that, during a recent spike in cases, no additional COVID-19-related deaths were reported.[18]  Again, these facts are not conclusive as

---

[13]As discussed *infra*, Lum *may* suffer from type 2 diabetes, though he has not been definitively diagnosed.

[14]*See COVID-19 (Coronavirus Disease): People at Increased Risk for Severe Illness –People with Certain Medical Conditions*, CDC (updated Feb. 1, 2021) https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Feb. 2, 2021).

[15]*See COVID-19: Older Adults*, CDC (updated Dec. 13, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html ("Risk for severe illness with COVID-19 increases with age, with older adults at highest risk.") (last visited Feb. 2, 2021).

[16]*COVID-19 Coronavirus: COVID-19 Cases*, BOP, https://www.bop.gov/coronavirus/ (last visited Feb. 2, 2021).

[17]*Press Releases*, BOP, https://www.bop.gov/resources/press_releases.jsp (explaining the COVID-19-related deaths occurred on March 29, 2020 and June 1, 2020) (last visited Feb. 2, 2021).

[18]*COVID-19 Coronavirus: COVID-19 Cases*, BOP, https://www.bop.gov/coronavirus/ (last visited Feb. 2, 2021).

to Lum's prospects should he contract the virus, but they provide clear evidence that USP Lompoc has corrected the failures that led to the deaths of two inmates during the initial surge in infections.  At minimum, Lum has presented no evidence to the contrary.  And there is more reason to believe that an infection, which Lum has resisted since the pandemic's onset, is even less likely to occur in the first place: Lum reports that while he declined a COVID-19 vaccine (Pfizer) in late December 2020, he will accept one "if and when" offered again.  Dkt. No. 75 at 5.[19]

Lum has failed to demonstrate a high likelihood of contracting COVID-19 and that, should he contract it, he would be unlikely to recover from it.  Thus, because Lum has failed to demonstrate an extraordinary and compelling reason warranting a sentence reduction, his second compassionate release motion is DENIED.

## II.    Section 3553(a) Factors & Risk of Danger to the Community

Even if Lum presented an extraordinary and compelling reason warranting a sentence reduction, the Court must consider any such reduction in light of the

_____

[19]The Court does not agree with the Government that "Lum cannot refuse the vaccine to prevent against COVID-19 on the one hand and then argue for compassionate release because he faces an increased risk of severe illness or death should he contract COVID-19 on the other hand." Dkt. No. 71 at 7.  Lum desiring more information about the vaccine before consenting to its administration is understandable under the circumstances, *see* Dkt. No. 75 at 2–5, including the newness of the vaccine, its emergency approval by the FDA, and the number of ailments from which Lum suffers.  That desire, shared by many in the general public, should not serve as an automatic, disqualifying factor for an inmate seeking Section 3582 relief.

sentencing factors set forth in 18 U.S.C. § 3553(a) and determine Lum is "not a danger to the safety of any other person or the community, as provided under [18 U.S.C. §] 3142(g)." *See* 18 U.S.C. § 3582(c)(1)(A); U.S.S.G. § 1B1.13.

Lum argues the following factors favor release: (1) he has been a model inmate and was successful abiding by his conditions of pretrial release; (2) his crime was not one of violence, nor did it involve firearms; (3) the pandemic; and (4) he has a viable release plan. Dkt. No. 67-3 at 20–23. Further, he argues—and the Court agrees—that the Court must consider the sentencing factors based on the current history and characteristics of the inmate. But other than his serving an additional six months in prison—allegedly as a model inmate—none of this information is new to the Court and does not alter the Court's Section 3553(a) analysis since denying his first compassionate release motion. Thus, for the same reasons articulated at Dkt. No. 65 at 15–17, the Court finds the Section 3553(a) factors counsel against release. In particular, the Court sentenced Lum to 30 months' imprisonment, varying downward for many of the same reasons repeated by the defense now. He is, in other words, barely 1/3 done. An early release now, given his crimes, would neither be just nor consistent with those guilty of similar conduct with similar records. For this alternative and independently sufficient reason, his motion is DENIED.

## <u>CONCLUSION</u>

For the reasons set forth herein, Lum's motion for compassionate release, Dkt. No. 67, is DENIED.

IT IS SO ORDERED.

DATED: February 2, 2021 at Honolulu, Hawai'i.



Derrick K. Watson
United States District Judge

*United States v. Nathan Yuen Grit Lum*, Criminal No. 18-00073-DKW-1,
**ORDER DENYING DEFENDANT'S SECOND MOTION FOR COMPASSIONATE RELEASE**